UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
KAMALADOSS SELVAM,

               Plaintiff,                              **MEMORANDUM AND ORDER**

         v.                                  20-CV-3299 (RPK)

UNITED STATES OF AMERICA, PATRICK
CONNOR, FOOD AND DRUG
ADMINISTRATION, and UNKNOWN
DEFENDANT(S),

               Defendants.
----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

       Plaintiff Kamaladoss Selvam was arrested in 2019 on federal charges related to the importation of misbranded controlled substances.  After prosecutors dropped those charges, Mr. Selvam brought this lawsuit.  He alleges that Special Agent Patrick Connor lied to obtain the warrant for his arrest.  Based principally on that alleged conduct, Mr. Selvam brings ten claims against defendants Agent Connor and unknown federal officers.  In addition, he brings five Federal Tort Claims Act ("FTCA") claims against the United States.  Defendants have filed a motion to dismiss.  For the reasons set out below, the motion is granted.

## BACKGROUND

       The following facts are taken from Mr. Selvam's complaint and briefs, and from the warrant application integral to Mr. Selvam's claims.  Mr. Selvam's allegations are assumed true for the purposes of this order.  Because Mr. Selvam comes to this Court *pro se*, the Court considers not only the facts in Mr. Selvam's complaint but also "the facts and allegations contained in [Mr. Selvam's] additional submissions."  *Manley v. New York City Police Dep't*, No. 05-cv-679 (FB) (LB), 2005 WL 2664220, at *1 (E.D.N.Y. Oct. 19, 2005).

1

In the fall of 2019, Special Agent Patrick Connor of the Food and Drug Administration ("FDA") obtained warrants for the arrest of Mr. Selvam, a relative of Mr. Selvam, and eight others. Pl.'s Mem. in Opp'n 5, 9, 11 (Dkt. #14).  In his application for a warrant, Agent Connor alleged that Mr. Selvam and the others had conspired to distribute the drug Tramadol illegally from a warehouse in Queens, and to launder the proceeds.  *See* Compl. & Aff. in Supp. of Appl. for Arrest Warrants, Defs.' Ex. A, *in* Decl. of Ass't U.S. Att'y Ekta R. Dharia ¶¶ 2, 11, 49-54 (Dkt. #13-2) ("Criminal Complaint" or "Crim. Compl.").  Mr. Selvam was held for eight days before prosecutors dropped the charges against him.  Compl. 4 (Dkt. #1).[*]  After Mr. Selvam was released, Agent Connor contacted bank and credit card companies that maintained accounts of Mr. Selvam's that were allegedly involved in the drug-distribution scheme.  According to Mr. Selvam, those companies then closed the accounts.  Compl. 11.

Mr. Selvam now brings this lawsuit.  He principally alleges that Agent Connor "knowingly and maliciously made sworn false statements" to obtain the warrant for Mr. Selvam's arrest and then caused the closure of Mr. Selvam's bank and credit card accounts in retaliation for Mr. Selvam's exercise of First Amendment rights.  Id. at 3, 11.  Mr. Selvam brings eight claims against Agent Connor and unknown federal officers, invoking 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971): committing malicious prosecution, fabricating evidence, committing false arrest, violating the equal protection clause, violating the due process clause, causing physical pain and suffering, intentionally inflicting emotional distress ("IIED"), and engaging in retaliation in violation of the First Amendment. Compl. 7-11.

---

[*] Since only the paragraphs in the first seven pages of the Complaint are numbered, all citations to the complaint are to page numbers.

Under Section 1983 alone, Mr. Selvam also brings claims against Agent Connor and the unknown federal officers for negligence and gross negligence and future loss of income and medical expenses.  Compl. 9, 11.

Finally, Mr. Selvam brings claims against the United States under the FTCA based on malicious prosecution, false arrest, negligent infliction of emotional distress ("NIED"), IIED, and negligence.  Compl. 12-15.

Defendants have moved to dismiss Mr. Selvam's claims under Rules 12(b)(1) and 12(b)(6). *See* Pls.' Notice of Mot. to Dismiss (Dkt. #13).  To their motion, they attached a copy of Agent Connor's Complaint and Affidavit in Support of Application for Arrest Warrants.  *See* Crim. Compl.

## STANDARD OF REVIEW

When a defendant moves to dismiss a lawsuit based on lack of subject-matter jurisdiction, the plaintiff must show that the Court has "the statutory or constitutional power to adjudicate" the action.  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015).  Where, as here, the facts bearing on jurisdiction are not in dispute, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); *see* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1350 (3d ed. 2021).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may also move to dismiss a complaint based on "failure to state a claim upon which relief can be granted."  To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Fed. R. Civ. P. 8).  The facial "plausibility standard is not akin to a 'probability requirement.'" *Ibid.* (quoting *Twombly*, 550 U.S. at 556, 570).  But it requires a plaintiff to allege sufficient facts to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.*  In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true. *Ibid.*  But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Ibid.*

When a plaintiff is proceeding *pro se*, the plaintiff's complaint must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotations and citations omitted).  "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).

Agent Connor's Criminal Complaint is properly considered in adjudicating defendants' motion to dismiss.  A document outside the pleadings may be considered in evaluating a motion to dismiss when the document is "incorporated . . . by reference" and "integral" to the complaint. *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (internal quotations omitted); *see Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  Applying this principle, courts often consider warrant affidavits when evaluating motions to dismiss that involve challenges to a warrant's validity. *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 284 (S.D.N.Y. 2015); *Vessa v. City of White Plains*, No. 12-cv-6989 (ER), 2014 WL 1271230, at *4 n. 9 (S.D.N.Y. Mar. 27, 2014), *aff'd,* 588 F. App'x 9 (2d Cir. 2014); *Brodeur v. City of New York*, No. 99-cv-651 (WHP), 2002 WL 424688,

at *2 (S.D.N.Y. Mar. 18, 2002).  In doing so, a court may consult the warrant application "only to establish [its] existence and legal effect, [and] to determine what statements [it] contained . . . not for the truth of the matters asserted."  *Liang v. City of New York*, No. 10-cv-3089 (ENV) (VVP), 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013) (internal quotation omitted), *aff'd sub nom. Liang v. Zee*, 764 F. App'x 103 (2d Cir. 2019).

## DISCUSSION

Defendants' motion to dismiss is granted in its entirety.  While the Court has jurisdiction over Mr. Selvam's FTCA claims, the standalone Section 1983 claims lack a valid cause of action, as do the fabrication-of-evidence, First Amendment, IIED, and physical-pain-and-suffering claims brought under *Bivens*.  The remaining *Bivens* claims and FTCA claims are also dismissed as insufficiently plead.

## I.     Mr. Selvam's Claims Under Section 1983 Are Dismissed

Mr. Selvam's claims under Section 1983 are dismissed.  Section 1983 authorizes recovery only against persons acting "under color of any [law] . . . of any State or Territory or the District of Columbia."   42 U.S.C. § 1983.   It "does not provide a cause of action against federal defendants."  *McCarthy v. Cuomo*, No. 20-cv-2124 (ARR), 2020 WL 3286530, at *6 (E.D.N.Y. June 18, 2020); *see Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005) ("This court has long construed the phrase 'under color of state law' as used in related civil rights statutes, notably 42 U.S.C. § 1983, to apply only to state actors, not federal officials.").   Since the individual defendants—Agent Connor and unnamed individuals "employed by defendant USA"—are federal agents, Compl. 2, Section 1983 cannot sustain his claims against them.  Accordingly, Mr. Selvam's claims under Section 1983 are dismissed for want of a valid cause of action.  *See Lubrano v. United States*, 751 F. Supp. 2d 453, 455 (E.D.N.Y. 2010), *aff'd*, 448 F. App'x 159 (2d Cir. 2012).

II.     **Mr. Selvam's Claims Under *Bivens* Are Also Dismissed**

Mr. Selvam has failed to state a claim under *Bivens*.  Even assuming that *Bivens* supplies a cause of action for malicious prosecution, qualified immunity bars it.  Moreover, Mr. Selvam does not state a claim for false arrest or for equal protection or due process violations.  Finally, *Bivens* does not extend to his fabrication-of-evidence, First Amendment, IIED, or physical-pain-and-suffering claims.

A.     **Qualified immunity bars the malicious-prosecution claim.**

Mr. Selvam's most developed *Bivens* claim is for malicious prosecution.  Courts have reached differing conclusions regarding whether malicious prosecution claims may be brought under *Bivens*.  *Compare Powell v. United States*, No. 19-cv-11351 (AKH), 2020 WL 5126392, at *11-12 (S.D.N.Y. Aug. 31, 2020) (permitting such a claim) *with Butler v. Hesch*, No. 16-cv-1540 (MAD) (CFH), 2020 WL 1332476, at *12-13 (N.D.N.Y. Mar. 23, 2020) (declining to permit such a claim) (collecting cases).  But even assuming that *Bivens* provides a cause of action, qualified immunity bars Mr. Selvam's claim.

Qualified immunity shields law enforcement officers from suit for money damages for constitutional or statutory violations arising in the course of their duties, so long as "it was objectively reasonable for them to believe that their acts did not violate those rights."  *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *see Ganek v. Leibowitz*, 874 F.3d 73, 80 (2d Cir. 2017) (Qualified immunity is "'an immunity from suit,' not simply from liability." (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).  In the context of malicious prosecution, a claim only lies in the absence of probable cause.  *See Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021).  Accordingly, an officer enjoys qualified immunity so long as "it was objectively reasonable for the officer to believe that probable cause existed."  *Carrillos v. Incorporated Village of Hempstead*, 87 F. Supp. 3d 357, 377 (E.D.N.Y. 2015) (citing *Golino*, 950 F.2d at 870).

The issuance of a warrant by a judicial officer upon a finding of probable cause creates a presumption that the officer's action in executing the warrant was reasonable. *Ganek*, 874 F.3d at 81 (citing *Golino*, 950 F.2d at 870). To defeat this presumption and the qualified immunity it entails, a plaintiff must adequately plead that the officer "(1) 'knowingly and deliberately, or with a reckless disregard of the truth,' procured the warrant, (2) based on 'false statements or material omissions,' that (3) 'were necessary to the finding of probable cause.'" *Ibid.* (citing *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994)). "To determine whether a false statement was necessary to a finding of probable cause, [the court] consider[s] a hypothetical corrected affidavit, produced by deleting any alleged misstatements from the original warrant affidavit and adding to it any relevant omitted information." *Id.* at 82. "[I]f probable cause remains after the warrant is corrected, [the] plaintiff has suffered no violation of Fourth Amendment rights." *Ibid* (internal quotations omitted).

Mr. Selvam's claim does not overcome qualified immunity because probable cause persists even when the statements that Mr. Selvam asserts are false are struck from the warrant affidavit. Agent Connor's warrant application provides a detailed description of a conspiracy to import and distribute misbranded Tramadol. It describes an investigation that included controlled buys, drug seizures, and the execution of an electronic search warrant that recovered what appeared to be "daily ledgers detailing the names, addresses, drugs, pill size, and pill amounts ordered by customers throughout the United States." Crim. Compl. ¶ 43; *id.* ¶¶ 5-10, 41-43. The investigation also involved surveillance of the warehouse that appeared to be the conspiracy's nerve center. *Id.* ¶¶ 11-25. Based on the warehouse surveillance and review of business records, Agent Connor concluded that a company named "Hosea Express, Inc.," which leased office space at the warehouse, "operate[d] as [a] front business[] primarily engaged in drug trafficking." *Id.* ¶ 38. He

7

observed that Hosea Express and another entity operated out of "different room[s] at the Warehouse," and that "based on personal observations and surveillance at the Warehouse, it appears that the primary activity in each room is the unpacking, organization, storage, repacking, labeling, and shipping of controlled substances." *Ibid*. Bank records variously identified Ezhil Sezhian Kamaldoss as Hosea Express, Inc.'s president, vice-president, or sole owner. *Id.* ¶ 39.

Agent Connor identified financial and other links between Mr. Selvam and the apparent conspiracy. First, Agent Connor explained, Mr. Selvam was a co-signer for an entity apparently linked to Hosea Express—"Hosea Worldwide Express Inc."—a company that listed Mr. Kamaldoss and Mr. Kamaldoss's wife as proprietors. *Ibid*. Second, Agent Connor identified evidence that Mr. Kamaldoss "regularly transferred money" from Indian accounts "into at least one U.S. bank account in the name of" Mr. Selvam. *Id.* ¶ 52. Mr. Selvam then transferred those funds "to pay down the balance on an American express account held jointly by" Mr. Kamaldoss and Mr. Selvam. *Ibid*. The sums involved were quite large: the complaint describes transfers of $60,000, $30,000, and $25,000 to Mr. Selvam's bank account, which preceded payments of $45,000, $31,725.27, and $23,851.29 to the joint American Express account. *Ibid*. Agent Connor further states that the American Express account held jointly by Mr. Selvam was then "regularly used to pay Federal Express bills in the name of Hosea." *Ibid*. Based on review of the electronic ledger reflecting apparent drug transactions, and the pattern of payments, Agent Connor concluded that the payments to the American Express account were "used to pay for the purchase of additional Tramadol pills." *Ibid.*

In his opposition papers, Mr. Selvam contends that notwithstanding the magistrate's issuance of arrest warrants based on a finding of probable cause, probable cause was lacking because four statements that Agent Connor made in seeking those warrants were false. First, Mr.

Selvam challenges the criminal complaint's statement that "[t]he only defendant law enforcement agents have not regularly observed moving or supervising the movement of boxes that contain, or are believed to contain, drugs into the Warehouse's loading dock or from the loading dock to vehicles, including USPS vehicles that drive to the Warehouse for pickup, is" Mr. Selvam. *Id*. ¶ 13. Mr. Selvam contends that this sentence is false because he never visited the warehouse. Pl.'s Mem. in Opp'n 2-3 (citing Crim. Compl. ¶ 13). Second, Mr. Selvam objects to the statement that "defendants regularly communicated with each other through email, sharing cloud-based documents and using online messaging applications such as WhatsApp." *Id*. at 8 (citing Crim. Compl. ¶ 41). Mr. Selvam alleges that statement is incorrect because in fact he only communicated with Mr. Kamaladoss, and did so exclusively by e-mail. *Ibid*. Third, Mr. Selvam disputes Agent Connor's description of the American Express account as an "account held jointly" by Mr. Selvam and Mr. Kamaldoss, stating that the account was not a "joint account," but rather an "authorized user account." *Id*. at 9-10 (citing Crim. Compl. ¶ 52). As a result, Mr. Selvam alleges, his family member (Mr. Kamaldoss) could use the card but was not liable for balances. Finally, Mr. Selvam disputes Agent Connor's statement that American Express records indicate Mr. Selvam himself "paid numerous bills, including Federal Express bills, associated with Hosea." *Id*. at 8-9 (citing Crim. Compl. ¶ 39). But assuming Mr. Selvam's statements in his opposition to be true, they would fall short of the required preliminary showing that Agent Connor intentionally or recklessly made "false statements" "necessary to the finding of probable cause." *Ganek*, 874 F.3d at 81 (internal quotations omitted).

Two statements that Mr. Selvam challenges do not appear false at all, even assuming the truth of Mr. Selvam's account. Contrary to Mr. Selvam's suggestion, Agent Connor's discussion of warehouse surveillance is not best read as representing that Mr. Selvam had been seen at that

location.  Agent Connor contrasted named defendants who *had* been "regularly observed moving or supervising the movement of boxes that contain, or are believed to contain, drugs" into the warehouse with Mr. Selvam, who had not.  Crim. Compl. ¶ 13.  In its context, the statement to which Mr. Selvam objects simply indicates that Mr. Selvam was not among the named defendants who had been regularly seen at the warehouse.

Mr. Selvam's objection to Agent Connor's description of communications among subjects of the investigation is similarly flawed.  Agent Connor's statement that "defendants regularly communicated with each other through email, sharing cloud-based documents and using online messaging applications such as WhatsApp," *id*. ¶ 41, is most plausibly read to indicate only that the named defendants, as a group, used e-mail and online messaging to communicate with each other.  It is not best read as representing that every defendant communicated with every other defendant using each of the means described.

The remaining assertions in Mr. Selvam's opposition brief do conflict with Agent Connor's account, but crediting Mr. Selvam's account would not strip the warrant affidavit of probable cause.  Mr. Selvam disputes Agent Connor's description of the American Express account as "held jointly" by Mr. Selvam and Mr. Kamaldoss, stating that the account was not a "joint account," but rather an "authorized user account."  Pl.'s Mem. in Opp'n 9-10 (citing Crim. Compl. ¶ 52).  But this alleged inaccuracy is immaterial—whether Mr. Kamaldoss would be liable for balances on the American Express account has scant bearing on probable cause.

Mr. Selvam's remaining factual challenge strips the complaint of one inculpatory allegation.  Mr. Selvam disputes that he himself "paid numerous bills, including Federal Express bills, associated with Hosea"—although he does not dispute that *someone* used the shared account to pay such bills, or that he himself paid the balances on the American Express card.  *See* Pl's

Mem. in Opp'n 8 ("Plaintiff has never paid any bill, let alone a federal express bill, for Hosea Exp[r]ess Inc."); *see id.* at 9.

But the complaint would still establish probable cause even were that statement (and the joint-account statement) struck. With those statements removed, the complaint is not much changed. It alleges that federal agents identified an alleged drug and money-laundering enterprise, including by tracking and intercepting packages containing misbranded Tramadol. Mr. Selvam was in contact with one of the key figures in that enterprise, his relative. He held an American Express card that was used to pay bills of the Tramadol distribution enterprise. Crim. Compl. ¶ 53. When the card was used in that way, Mr. Selvam's relative wired him tens of thousands of dollars. *Id.* ¶ 52. And Mr. Selvam himself used those funds to pay down the balance. *Ibid.* Taken together, these allegations suffice to support probable cause that Mr. Selvam was a knowing participant in the drug and money-laundering conspiracies described in the complaint. To be sure, they do not foreclose the possibility that Mr. Selvam's apparent actions in support of the conspiracies were unwitting. But Mr. Selvam's ties to a key member of the conspiracy, and his role in the conspiracy's finances, would warrant a person of reasonable caution in believing that Mr. Selvam was a knowing conspirator. "[T]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." *Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012) (internal quotations omitted). Accordingly, Mr. Selvam has not adequately pleaded that false statements by Agent Connor were "were necessary to the finding of probable cause" underlying the warrant for his arrest. *Ganek*, 874 F.3d at 81. Mr. Selvam's malicious-prosecution claim is therefore dismissed.

### B.     Mr. Selvam has also failed to plead a claim for false arrest.

Mr. Selvam's claim for false arrest must also be dismissed. Assuming that *Bivens* permits false-arrest claims of the sort pressed by Mr. Selvam, Mr. Selvam fails to plead false arrest for

several reasons.  First, false-arrest claims are directed at detentions without legal process. *Broughton v. State*, 37 N.Y.2d 451, 457 (N.Y. 1975).  Where "some sort of prior judicial proceeding" has occurred, malicious prosecution, not false arrest, is the proper remedy.  *Ibid.* Because a judge's issuance of a warrant qualifies as a prior judicial proceeding, "an unlawful arrest made pursuant to an arrest warrant sounds not in false arrest but in malicious prosecution." *Assegai v. Bloomfield Bd. of Ed.*, 165 F. App'x 932, 934-35 (2d Cir. 2006) (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995)).  Second, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotations omitted).  As explained above, Mr. Selvam was arrested based on a magistrate's determination of probable cause.  *See* pp. 6-11, *supra*.  And Mr. Selvam has not adequately pleaded that probable cause was wanting despite that determination.  While Mr. Selvam alleges that certain statements in the warrant affidavit were false, those statements were not necessary to the magistrate's probable-cause finding.  *Ibid.*

### C.   Mr. Selvam has failed to plead Equal Protection or Due Process violations.

Mr. Selvam's claims that Agent Connor and the unknown defendants violated his equal protection and due process rights are also deficient.  Assuming the availability of causes of action for these claims under *Bivens*, the claims are too conclusory to survive.  Mr. Selvam simply alleges that his "equal protection and due process rights were violated by defendant Patrick Connor and Unk[]nown defendant(s), acting under color of law, in their individual capacities, that resulted in Plaintiff's loss of liberty and loss of privacy and ultimately resulted in permanent irrepar[]able damages to Plaintiff."  Compl. 9.  These conclusory statements do not plead an equal protection violation, because to state "a violation of the Equal Protection Clause, a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).  Here, plaintiff has not

made any allegation that defendants treated him differently from any similarly situated individuals. By that same token, Mr. Selvam does not explain with any specificity what conduct he believes violated his due process rights, and why.  The complaint therefore does not "give the defendant fair notice of what" the alleged due process violation "is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  Because the complaint does not adequately plead a due process or equal protection violation, this count of the complaint is dismissed.

### D.     *Bivens* does not extend to plaintiff's remaining constitutional or tort claims.

*Bivens* does not provide Mr. Selvam a cause of action for his fabrication-of-evidence, First Amendment, IIED, or physical-pain-and-suffering claims.

#### 1.   *Bivens* provides no cause of action for fabrication of evidence.

*Bivens* does not provide an avenue for Mr. Selvam to pursue his fabrication-of-evidence claim.  The causes of action that may be pursued under *Bivens* are limited.  In *Bivens* itself, the Supreme Court recognized an implied damages action against federal narcotics officers for a Fourth Amendment violation arising from a warrantless arrest of a man in his own home.  *Bivens*, 403 U.S. at 389.  It recognized two more implied damages actions during the decade that followed. In 1979, the Court recognized an implied action against members of Congress under the Fifth Amendment for employment discrimination on the basis of sex.  *Davis v. Passman*, 442 U.S. 228, 249-50 (1979).  The following year, the Court recognized an implied damages action against federal prison officials for an Eighth Amendment violation arising from the denial of medical care to a prisoner resulting in death.  *Carlson v. Green*, 446 U.S. 14, 16 (1980).  Those decisions, the Supreme Court has explained, "were the products of an era in which the Court routinely inferred 'causes of action' that were 'not explicit' in the text of the provision that was allegedly violated." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (citation omitted).  But "[i]n later years," the Supreme Court "came to appreciate more fully the tension between this practice and the

Constitution's separation of legislative and judicial power." *Ibid.*  Since then, the Supreme Court

has "recognized that Congress is best positioned to evaluate whether, and the extent to which,

monetary and other liabilities should be imposed upon individual officers and employees of the

Federal Government based on constitutional torts." *Id.* at 742 (internal quotations omitted).  It has

described the "expansion of *Bivens*" as "a disfavored judicial activity," and "gone so far as to

observe that if 'the Court's three Bivens cases had been decided today, it is doubtful that [the

Court] would have reached the same result." *Id.* at 742-43 (brackets, ellipses, and internal

quotations omitted).

The Supreme Court has instructed courts to engage in a "two-step inquiry" in determining

whether a *Bivens* claim is viable today.  First, the court should "inquire whether" the claim being

pressed "arises in a new context or involves a new category of defendants." *Id.* at 743 (internal

quotations omitted).  A context is "new if it is different in a meaningful way from previous *Bivens*

cases decided by" the Supreme Court. *Ibid.* (internal quotations omitted).  Meaningful differences

include:

> the rank of the officers involved; the constitutional right at issue; the generality or
> specificity of the official action; the extent of judicial guidance as to how an officer should
> respond to the problem or emergency to be confronted; the statutory or other legal mandate
> under which the officer was operating; the risk of disruptive intrusion by the Judiciary into
> the functioning of other branches; or the presence of potential special factors that previous
> *Bivens* cases did not consider.

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859-60 (2017).

If "a claim arises in a new context," a court must ask "whether there are any special factors

that counsel hesitation" about extending Bivens to the new claim. *Hernandez*, 140 S. Ct. at 743

(internal quotations and brackets omitted).  "[S]eparation-of-powers principles" are "central" to

that inquiry. *Ibid*. (quoting *Ziglar*, 137 S. Ct. at 1857).  A court must ask "whether the Judiciary

is well suited, absent congressional action or instruction, to consider and weigh the costs and

14

benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1858.  A court may consider whether the judiciary possesses the capacity to assess the impact of liability "on governmental operations" if liability were created, and whether "the case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." *Ibid.*  If any factor gives a court "reason to pause" when considering whether to recognize a cause of action, *Bivens* may not be extended.  *Hernandez*, 140 S. Ct. at 743.  The threshold here—"'counsel[ing] hesitation'— is remarkably low." *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009) (citation omitted).

*Bivens* is unavailable for Mr. Selvam's fabrication-of-evidence claim under these principles.  Mr. Selvam alleges that Agent Connor violated his Fifth Amendment rights by "intentionally filing [a] false affidavit[]" to initiate his prosecution.  Compl. 7-8. This claim matches none of the contexts recognized in *Bivens*, *Davis*, and *Carlson*, and it has likewise never been recognized by the Second Circuit.  *See Powell v. United States*, No. 19-cv-11351 (AKH), 2020 WL 5126392, at *8 (S.D.N.Y. Aug. 31, 2020) (surveying cases).  The Fourth, Fifth, and Eighth Circuits have expressly rebuffed such claims.  *See Annappareddy v. Pascale*, 996 F.3d 120, 137 (4th Cir. 2021) (declining to recognize cause of action for fabrication of evidence under *Bivens*); *Cantú v. Moody*, 933 F.3d 414, 421 (5th Cir. 2019) (same), *cert. denied*, 141 S. Ct. 112, (2020); *Farah v. Weyker*, 926 F.3d 492, 502 (8th Cir. 2019) (same).

Moreover, several factors counsel hesitation about extending *Bivens* to this context.  First, an implied cause of action for the fabrication of evidence of the sort that Mr. Selvam seeks would "require courts to interfere in the executive branch's investigative and prosecutorial functions." *Annappareddy*, 996 F.3d at 137.  Mr. Selvam's claim arises against the backdrop of a complex, multi-agency federal investigation with international components.  Crim. Compl. ¶¶ 2, 11-20, 41,

49-54; Pl.'s Mem. in Opp'n 2-3.  Recognizing a *Bivens* cause of action arising from an agent's description of such an investigation would intrude more deeply into Executive Branch functioning than recognizing a cause of action pertaining to a single warrantless search and seizure by narcotics officers.  *Cf. Annappareddy*, 996 F.3d at 137-38 (indicating hesitation about extending *Bivens* to fabrication allegations that arose out of "a complex and multi-agency investigation" spanning several states); *Cantú*, 933 F.3d at 424 (indicating hesitation about extending *Bivens* into fabrication allegations arising out of "a multi-jurisdictional investigation into transnational organized crime").  Moreover, assessing a claim for fabrication of evidence would require inquiry into whether the asserted fabrication was "likely to influence a jury's decision," and whether "the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *See Garnett v. Undercover Officer C0039*, 838 F.3d 265, 278-80 (2d Cir. 2016) (internal quotations omitted).  Inquiry into those matters implicates separation-of-powers considerations because it would require a "a wide-ranging dive into . . . all evidence available to investigators, prosecutors, judges, and juries." *Annappareddy*, 996 F.3d at 138 (citation omitted).  Such inquiries "encroach on the usual secrecy of charging decisions" that is the discretionary domain of the executive branch. *Farah*, 926 F.3d at 501.

Finally, Congress "has long been on notice that the Supreme Court is disinclined to extend *Bivens* to new contexts." *Cantú*, 933 F.3d at 423 (citing *Ziglar*, 137 S. Ct. at 1857).  Rather than establish a *Bivens*-style cause of action for fabrication of evidence, Congress has instead created other, more limited statutory mechanisms that allow victims of fabrication to recover in certain cases.  One such enactment permits "courts to award attorney fees to criminal defendants who prevail against 'vexatious, frivolous, or bad-faith' positions taken by the government," *Farah v. Weyker*, 926 F.3d 492, 501 (8th Cir. 2019) (discussing 18 U.S.C. § 3006A note), and another

16

permits those wrongfully convicted and sentenced to sue the government for damages, *ibid.* (discussing 28 U.S.C. § 1495).  Against this backdrop, Congress's "failure" to provide a *Bivens*-style remedy here indicates "more than mere oversight." *Cantú*, 933 F.3d at 423 (quoting *Ziglar*, 137 S. Ct. at 1862).  Because several factors counsel judicial hesitation, whether to create a damages action against individual federal officers for fabrication of evidence "is a decision for Congress to make, not the courts."  *Ziglar*, 137 S. Ct. at 1860.

### 2.   Plaintiff's First Amendment claim cannot be pursued under *Bivens*.

*Bivens* also supplies no cause of action for plaintiff's claim that Agent Connor (and unknown defendants) retaliated against him in violation of the First Amendment by contacting plaintiff's banks regarding plaintiff's suspected illegal activity.  The Supreme Court has cautioned that it has "never held that *Bivens* extends to First Amendment claims."  *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012); *see Iqbal*, 556 U.S. at 675.  And a rough consensus has emerged in the lower courts that "there is no Bivens remedy available for violations of the First Amendment." *Davila v. Gutierrez*, 330 F. Supp. 3d 925, 939 (S.D.N.Y. 2018) (collecting cases), *aff'd*, 791 F. App'x 211 (2d Cir. 2019); *but see Boule v. Egbert*, 980 F.3d 1309, 1317 (9th Cir. 2020) (recognizing a First Amendment retaliation claim), *reh'g en banc denied*, 998 F.3d 370 (9th Cir. 2021); *Boule*, 998 F.3d at 998 F.3d (Bumatay, J., dissenting from denial of reh'g) (observing that in recognizing the claim, the Ninth Circuit is "an outlier among [its] sister courts" and collecting Second, Fourth, Sixth, and D.C. Circuit cases declining to extend *Bivens* to First Amendment contexts).  I follow the weight of existing precedent.

Several factors counsel hesitation before extending *Bivens* to the context of First Amendment retaliation.  Whether a claim exists depends on whether defendants took actions "motivated or substantially caused by" the plaintiff's exercise of a First Amendment right.  *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).  A judicially created *Bivens* claim turning on

an inquiry into the motives of law enforcement officers for otherwise lawful actions raises separation-of-powers concerns.  See *Hernandez*, 140 S. Ct. at 743.  And caution may be particularly warranted where, as here, *Bivens* liability would be premised on a government actor's speech.  "[T]he government has speech interests of its own." *Storms v. Shinseki*, 319 F. Supp. 3d 348, 355 (D.D.C. 2018), *aff'd*, 777 F. App'x 522 (D.C. Cir. 2019).  The government's interest in "speak[ing] for itself, without facing unique court-imposed liability regimes" counsels caution in extending Bivens here.  *Ibid.*  Given these factors counseling hesitation, "Congress is better suited than the Judiciary to determine whether a damages action should arise." *Ibid.*

### 3.   *Bivens* does not support Mr. Selvam's IIED claims.

Mr. Selvam's IIED claim against the individual defendants is also dismissed because it is not viable under *Bivens*.  At minimum, to bring a claim under *Bivens,* a plaintiff "must allege that he has been deprived of a constitutional right." *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006).  Mr. Selvam's IIED allegations fail to satisfy this requirement, because IIED is a common-law claim, not a constitutional one.  *See, e.g., Ojo v. United States*, No. 15-cv-6089 (ARR) (LB), 2018 WL 3863441, at *7 (E.D.N.Y. Aug. 14, 2018).  Accordingly, Mr. Selvam cannot bring an IIED claim under *Bivens*.

### 4.   Mr. Selvam cannot pursue a claim for "physical pain and suffering" under *Bivens*.

Mr. Selvam's Fourth Amendment physical-pain-and-suffering claim against the individual defendants also fails to state a claim under *Bivens*.  In that claim, Mr. Selvam alleges that "[a]s a result [of] the defendant[s'] violation of the above civil rights, Plaintiff was caused to endure . . . physical and emotional pain." Compl. 9-10.  He elsewhere characterizes his pain and suffering as "damages" "directly and proximately caused" by the defendants "actions or inactions." *Id.* at 3-4. Mr. Selvam's claim of physical pain and suffering thus appears to be a request for damages

resulting from the constitutional violations pleaded elsewhere in the complaint. Accordingly, this *Bivens* claim rises or falls with those underlying allegations. Because Mr. Selvam has not validly pleaded an underlying constitutional violation cognizable under *Bivens, see* pp. 6-18, *supra*, he cannot recover damages associated with his underlying *Bivens* claims.

III.     **Mr. Selvam's FTCA Claims Are Dismissed**

While defendants are mistaken in contending that the Court lacks jurisdiction over plaintiff's FTCA claims, those claims are dismissed because each claim is either inadequately pleaded or barred by the probable cause established by the warrant affidavit.

A.  **The Court possesses subject-matter jurisdiction over plaintiff's claims.**

Contrary to defendants' arguments, the Court has subject-matter jurisdiction over Mr. Selvam's FTCA claims.

1.  **The discretionary-function exception does not apply.**

Defendants contend that the FTCA's discretionary-function exception bars jurisdiction over plaintiff's malicious-prosecution and false-arrest claims. That exception provides that the FTCA's waiver of sovereign immunity does not apply to "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a). It covers acts that "involve an element of judgment or choice" and are "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (internal quotations omitted).

Defendants contend that this exception encompasses Mr. Selvam's malicious-prosecution and false-arrest claims because law-enforcement activities are discretionary and grounded in considerations of policy. Defs.' Mem. in Supp. 21-22. But while the discretionary-function exception sometimes cloaks law-enforcement officers in immunity, *see, e.g.*, *Caronia v. United*

*States*, No. 13-cv-5758 (FB) (LB), 2015 WL 4872558, at *5 (E.D.N.Y. Aug. 13, 2015), *aff'd sub nom. Caronia v. Orphan Med., Inc*., 643 F. App'x 61 (2d Cir. 2016), it does not do so here.

As defendants note, the FTCA's law-enforcement proviso counterbalances the discretionary-function exception. *See* 28 U.S.C. § 2680(h). This proviso waves immunity to claims arising from certain intentional torts committed by law enforcement officers, including false arrest and malicious prosecution. *Ibid.*; *see Millbrook v. United States*, 569 U.S. 50, 57 (2013). Defendants argue that they enjoy immunity under the FTCA notwithstanding the law-enforcement proviso because the section containing that waiver grants immunity to prosecutors for these same torts, and that immunity extends to law enforcement officers who serve as prosecutorial adjuncts. *See* Defs.' Mem. in Supp. 22-23; Reply 8-9. This argument fails. While officers partake of prosecutorial immunity when assisting prosecutorial activities directly, *see Caronia*, 2015 WL 4872558, at *5, "the exception does not protect investigative and law enforcement agents . . . where the actions of those agents are sufficiently separable from the protected discretionary decision to prosecute." *Morales v. United States*, No. 94-cv-4865 (JSR), 1997 WL 285002, at *1 (S.D.N.Y. May 29, 1997) (internal quotations omitted). And "a federal investigator's decision to lie under oath is separable from the discretionary decision to prosecute." *Reynolds v. United States*, 549 F.3d 1108, 1113 (7th Cir. 2008) (collecting cases); *see Barone v. United States*, No. 12-cv-4103 (LAK), 2014 WL 4467780, at *11 (S.D.N.Y. Sept. 10, 2014); *Wang v. United States*, No. 01-cv-1326 (HB), 2001 WL 1297793, at *4 (S.D.N.Y. Oct. 25, 2001), *aff'd*, 61 F. App'x 757 (2d Cir. 2003).

Because Mr. Selvam alleges that Agent Connor lied in the arrest-warrant affidavit, *e.g.*, Compl. 3; Pl.'s Mem. in Opp'n 3, this Court possesses jurisdiction to hear the claim, despite the immunity prosecutors enjoy.

### 2.   Nor is the malicious-prosecution claim unripe.

There is no greater merit to defendants' argument that the Court lacks subject-matter jurisdiction over plaintiff's malicious-prosecution claim because the claim is unripe.  *See* Defs.' Mem. in Opp'n 23-24.  Defendants assert that the favorable-termination element of a malicious prosecution claim is not simply an element of the claim but a jurisdictional ripeness requirement. *See ibid.*  And they argue that since plaintiff's complaint was dismissed without prejudice— leaving the government free to reinstitute the charges—no favorable termination could have occurred.  *See ibid.*

But plaintiff has adequately pleaded favorable termination here—even assuming that favorable termination bears on ripeness.  To plead favorable termination, a plaintiff must "plead that the termination of the prosecution[] against him affirmatively indicated his innocence." *Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) (affirming a judgment that a claim was inadequately pleaded where the plaintiff alleged only that the underlying charges were "dismissed" without more, and later indicated the dismissal was made "in the interests of justice based on jurisdictional issue [sic]," *id.* at 23 n.1 (quoting the pleadings and briefings)).  Contrary to defendants' contentions, whether an action may be reinstituted is not determinative of that question.  *See Spak v. Phillips*, 857 F.3d 458, 463-64 (2d Cir. 2017) (holding that "a *nolle prosequi* constitutes a 'favorable termination'" even though "it does not prevent a prosecutor from re-charging the same defendant for the same criminal conduct at some point in the future"); *accord* W Page Keeton et al., Prosser & Keeton on Torts § 119 (5th ed. 1984).  While dismissals inconsistent with innocence do not suffice for favorable termination, some dismissals without prejudice do.  *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 198 (N.Y. 2000) ("A dismissal without prejudice qualifies as a final, favorable termination if the dismissal represents 'the formal abandonment of the proceedings by the public prosecutor.'" (quoting Restatement (Second) of

21

Torts § 659 cmt. c (Am. L. Inst. 1977)).  If the disposition does not address the merits, a plaintiff may still plead favorable termination by alleging "that the action was abandoned under circumstances which fairly imply [his] innocence." *Castro v. E. End Plastic, Reconstructive & Hand Surgery, P.C.*, 850 N.Y.S.2d 483, 485 (N.Y. App. Div. 2008) (internal quotations omitted); *accord Ying Li v. City of New York*, 246 F. Supp. 3d 578, 610 (E.D.N.Y. 2017) (declining to dismiss where a plaintiff "sufficiently alleged favorable termination" even without "alleg[ing] the specific disposition of the case") (collecting cases).

Mr. Selvam has pleaded that the proceedings against him were terminated under circumstances which indicate his innocence, and he has set forth facts to support his account. *See* Pl.'s Mem. in Opp'n 10-11, 12-15.  Defendants correctly state that a dismissal of a criminal complaint for facial insufficiency does not establish favorable termination because it offers "no indication that the prosecutor abandoned charges," Defs.' Mem. in Supp. 24 (quoting *Smith-Hunter*, 95 N.Y.2d at 198 (discussing *MacFawn v. Kresler*, 88 N.Y.2d 859, 860 (N.Y. 1996))), but those are not the allegations here.  Mr. Selvam's allegations are sufficient to state a ripe claim and to survive a motion to dismiss. *See Birch v. Danzi*, No. 18-cv-839 (PKC) (LB), 2018 WL 3613016, at *6 (E.D.N.Y. July 26, 2018) (finding that allegations that the government dropped charges "due to a lack of evidence and the falsified confession" adequately pleaded favorable termination) (citing *Ying Li*, 246 F. Supp. 3d at 661; *Mamakos v. United Airlines, Inc.*, No. 14-cv-7294 (SJF) (AKT), 2020 WL 6319126, at *9 (E.D.N.Y. Sept. 22, 2020) (declining to dismiss because the plaintiff had adequately pleaded favorable termination).

**B.    Mr. Selvam has not adequately pleaded malicious prosecution or false arrest under the FTCA.**

Turning to the merits, Mr. Selvam has not adequately pleaded malicious-prosecution or false-arrest claims under the FTCA.  The FTCA permits suit against the United States for the

tortious actions of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346; *id.* § 2674.  Accordingly, to state a claim under the FTCA, Mr. Selvam must adequately plead each element of the relevant claim under New York law.

Under New York law, a plaintiff claiming malicious prosecution or false arrest must establish the absence of probable cause.  *See Kee*, 12 F.4th at 162 (quoting *Smith-Hunter*, 95 N.Y.2d at 195); *Burns v. City of New York*, 120 N.Y.S.3d 360, 362 (N.Y. App. Div. 2020).  Failure to do so dooms these claims, since "[p]robable cause to believe that a person committed a crime is a complete defense to causes of action alleging false arrest and malicious prosecution."  *Braxton v. City of New York*, 115 N.Y.S.3d 408, 409 (N.Y. App. Div. 2019), *leave to appeal denied*, 35 N.Y.3d 906 (2020).  "The existence or absence of probable cause becomes a question of law to be decided by the court . . . where there is no real dispute as to the facts."  *Ibid*.  As described above, Mr. Selvam has not established "the absence of probable cause."  *Kee*, 12 F.4th at 162; *see Ganek*, 874 F.3d at 82.  Here, Mr. Selvam has contended that certain assertions in Agent Connor's warrant affidavit are false, but probable cause would persist even in the absence of those assertions.  *See* pp. 6-11, *supra*. Accordingly, Mr. Selvam has not adequately pleaded the absence of probable cause here.

Mr. Selvam's false-arrest claim is also deficient for the further reason that since Mr. Selvam was arrested pursuant to a warrant, a claim for malicious prosecution, not false arrest, is the proper remedy for any harm.  *Broughton*, 37 N.Y.2d at 457.  Because plaintiff has failed to allege the necessary elements of the underlying torts of false arrest and malicious prosecution, his FTCA claims seeking compensation based on those torts must be dismissed.

C.      **Mr. Selvam's conclusory pleadings do not sustain an NIED claim.**

Mr. Selvam has not adequately pleaded NIED.  To plead NIED in New York, a plaintiff must allege that the defendant breached a "duty of care resulting directly in emotional harm." *Ornstein v. N.Y.C. Health & Hosps. Corp.*, 10 N.Y.3d 1, 6 (N.Y. 2008) (citation omitted).  This duty must be "specific to the plaintiff, and not some amorphous, free-floating duty to society." *Tigano v. United States*, 527 F. Supp. 3d 232, 249 (E.D.N.Y. 2021) (internal quotations omitted). Furthermore, the resulting "mental injury [must be] a direct, rather than a consequential, result of the breach" and "the claim [must] possesses some guarantee of genuineness."  *Id.* at 248 (internal quotations omitted).  This "guarantee of genuineness" requires "a specific, recognized type of negligence that obviously has the propensity to cause extreme emotional distress 'such as the mishandling of a corpse or the transmission of false information that a parent or child had died.'" *J.H. v. Bratton*, 248 F. Supp. 3d 401, 416 (E.D.N.Y. 2017) (quoting *Taggart v. Costabile*, 14 N.Y.S.3d 388, 396 (N.Y. App. Div 2015)) (brackets omitted).  Alternatively, the breach "'must have at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own safety.'"  *Ibid* (quoting *Taggart*, 14 N.Y.S.3d at 396).  These stringent requirements "filter out" most claims.  *Taggart*, 14 N.Y.S.3d at 396.

Mr. Selvam's pleadings do not meet these requirements.  First, he does not identify the sort of duty cognizable in an NIED claim.  While an officer may have duty to perform investigations diligently, that is "a general duty to society," not a "specific duty" owed to Mr. Selvam.  *Lauer v. City of New York*, 95 N.Y.2d 95, 100 (2000) (declining to find that a coroner owed a "specific duty" to the parents of a dead child where the coroner erroneously listed a child's cause of death a homicide, destroying the parents' marriage and causing substantial emotional harm); *see, e.g.*, *Kraft v. City of New York*, 696 F. Supp. 2d 403, 424 (S.D.N.Y. 2010) ("[W]hile police defendants may owe a general duty to the public, they did not owe any specific duty to [the] plaintiff" when

24

they incorrectly transported him to a mental hospital), *aff'd*, 441 F. App'x 24 (2d Cir. 2011); *see also Hazan v. City of New York*, No. 98-cv-1716 (LAP), 1999 WL 493352, at *5 (S.D.N.Y. July 12, 1999); *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 285 (N.D.N.Y. 2018); *Albert v. City of New York*, No. 17-cv-3957 (ARR) (SMG), 2019 WL 3804654, at *9-11 (E.D.N.Y. Aug. 13, 2019).

Nor has Mr. Selvam asserted "a specific, recognized type of negligence that obviously has the propensity to cause extreme emotional distress." *Bratton*, 248 F. Supp. 3d at 416. The harms that he alleges—emotional injury and embarrassment resulting from his arrest—are harms cognizable through the torts of false arrest or malicious prosecution, but not NIED. *Dollard v. City of New York*, 408 F. Supp. 3d 231, 238-39 (E.D.N.Y. 2019) (collecting cases). Furthermore, embarrassment from publicity surrounding his arrest—and just what publicity he is referring to Mr. Selvam does not say—sounds more in defamation than in NIED's carefully circumscribed realm. *See Taggart*, 14 N.Y.S.3d at 396.

### D.    Mr. Selvam has not identified sufficiently "outrageous conduct" or alleged sufficient facts demonstrating intent to give rise to an IIED claim.

Mr. Selvam's IIED claim under the FTCA fails because the conduct Mr. Selvam alleges does not meet New York's "rigorous[] and difficult to satisfy" standard for "extreme and outrageous conduct." *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (N.Y. 1993)). To plead IIED, the plaintiff must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 56 (N.Y. 2016) (internal quotations omitted). "The question of whether a complaint adequately alleges such grievous allegations is a question to be determined by the Court." *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 314 (S.D.N.Y. 2005) (citing *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir.1999). Setting aside

25

plaintiff's conclusory statements, the only conduct he alleges was that Agent Connor made several non-material false statements on the application for his arrest warrant, resulting in his arrest, which was allegedly publicized.  Pl.'s Mem. in Opp'n 23.  Courts have consistently held that such conduct is simply not "so outrageous . . . and so extreme" to support an IIED claim.  *See Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 160 (S.D.N.Y. 2006) (holding that allegations of false arrest and excessive force "do not go beyond all possible bounds of decency"); *Jones v. City of New York*, 988 F. Supp. 2d 305, 318 (E.D.N.Y. 2013) (concluding that allegations that prosecutors withheld evidence, prolonged a detention, and manipulated DNA reports do not meet the IIED standard); *Garrison v. Toshiba Bus. Sols. (USA). Inc.*, 907 F. Supp. 2d 301, 308 (E.D.N.Y. 2012) ("Generally, defamatory statements are not considered so extreme as to constitute the extreme and outrageous conduct required to support such a claim." (internal quotations omitted)).

Similarly, IIED requires pleading the defendants' "intent to cause, or disregard of a substantial probability of causing, severe emotional distress."  *Chanko*., 27 N.Y.3d at 56.  Again, aside from plaintiff's "bare assertions" of malice, *Iqbal*, 556 U.S. at 681, no factual allegations support the conclusion that defendants acted with the requisite mens rea.  *See Druschke*., 359 F. Supp. 2d at 314-15 (S.D.N.Y. 2005) (dismissing an IIED claim for, among other reason, insufficiently pleading allegations of intent); *Tigano*, 527 F. Supp. 3d at 248 (same).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, so this claim is dismissed.

### E.    Mr. Selvam's FTCA negligence claim is also subject to dismissal.

Mr. Selvam's negligence claim must also be dismissed.  Mr. Selvam asserts that defendants owed him "a duty . . . to not inflict financial damage," and that they breached this duty by negligently "contact[ing] plaintiff's banks and clos[ing his] Bank Accounts and Credit Cards."  Pl.'s Mem. in Opp'n 23.

26

"[T]he threshold question" in any negligence action is whether the defendant owes the plaintiff a duty of care.  *In re Agape Litig*., 681 F. Supp. 2d 352, 359 (E.D.N.Y. 2010) (internal quotations omitted).  Whether such a duty exists is a question of law.  *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A*., 261 F.R.D. 13, 27 (S.D.N.Y. 2009), (citing *Purdy v. Public Adm'r of Westchester*, 72 N.Y.2d 1, 8 (N.Y.1988)), *aff'd sub nom. Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A*., 382 F. App'x 107 (2d Cir. 2010).  As a general matter, "actors engaging in conduct that creates a risk to others have a duty to exercise reasonable care to avoid causing *physical* harm."  Restatement (Third) of Torts: Phys. & Emot. Harm § 7 cmt. a (Am. L. Inst. 2016) (emphasis added); *see Morgan Stanley & Co. Inc. v. J.P. Morgan Chase Bank, N.A.*, 645 F.Supp.2d 248, 257 (S.D.N.Y. 2009) (explaining that under New York law, "[a]ctionable negligence requires injury to person or property as the proximate result of the allegedly negligent act" (quoting *Greco v. National Transp. Co*., 222 N.Y.S.2d 145, 146 (N.Y. App. Div. 1961)).

In contrast, under the "economic loss" rule, "[i]f the harm is sustained is purely economic, then a claim of negligence is not actionable, because 'in the absence of any alleged physical property damage, the connection between defendants' activities and plaintiff's economic losses . . . is too tenuous and remote to permit recovery on any tort theory.'"  *Ibid.* (quoting *Goldberg Weprin & Ustin, LLP v. Tishman Const. Corp.*, 713 N.Y.S.2d 57, 58 (N.Y. App. Div. 2000)); *see* 16 N.Y. Prac., Torts 21:13:10 ("Pursuant to the 'economic loss rule,' there can be no recovery in tort when the only damages alleged are for economic loss.").

Plaintiff's claim for financial damages here is for economic losses that do not result from physical harm.  And plaintiff has not asserted any special relationship between defendants and

plaintiff that would trigger a heightened duty. Accordingly, plaintiff has not adequately pleaded a claim of negligence under the FTCA.

**IV.      The Discovery and *Franks* Hearing Requests Are Denied**

Mr. Selvam's requests for discovery, *see* Pl.'s Mem. in Opp'n 14-16, and for a *Franks* hearing, *id.* at 4, are denied. As a general matter, "discovery is authorized solely for the parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim." *Podany v. Robertson Stephens*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004); *see, e.g., Bridgewater v. Taylor*, 745 F. Supp. 2d 355, 358 (S.D.N.Y. 2010) (compiling cases). Because Mr. Selvam fails to plead plausible claims, he is not entitled to discovery to develop those claims.

So too for "jurisdictional discovery." Pl.'s Mem. in Opp'n 2 & 15. Only when "jurisdictional facts are placed in dispute" must a court "decide issues of fact by reference to evidence outside the pleadings" at the motion-to-dismiss stage. *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999). No such facts are in dispute here. Defendants challenge the Court's subject-matter jurisdiction over several of plaintiff's FTCA claims by contesting the statute's applicability to plaintiff's alleged facts, not the plaintiff's facts themselves. Defs.' Mem. in Supp. 21-26. Jurisdictional discovery is not warranted.

For similar reasons, Mr. Selvam is not entitled to a *Franks* hearing. *Franks* hearings are typically made available in *criminal* cases "to challenge the truthfulness of factual statements made in an affidavit supporting a warrant." *Franks v. Delaware*, 438 U.S. 154, 155 (1978). But even setting aside that this is a civil case, not a criminal one, a litigant is entitled to a *Franks* hearing only after making a substantial preliminary showing that a deliberate falsehood or statement made with reckless disregard for the truth was necessary to the judge's finding of probable cause. *Id.* at 155-156. An alleged falsehood or misstatement is material only if probable cause no longer exists

28

once the "alleged misstatements" are "delet[ed] . . . from the original warrant affidavit." *Ganek*, 874 F.3d at 82 (citing *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993)).  As explained above, Mr. Selvam's complaint has not made the requisite substantial preliminary showing.  Rather, Agent Connor's affidavit would establish probable cause even if the statements that Mr. Selvam contests were removed.  *See* pp. 6-11, *supra*.  Accordingly, even if *Franks* hearings could be made available in civil cases, Mr. Selvam has not made the showing for obtaining one.

## CONCLUSION

Mr. Selvam's complaint is dismissed.  The requests for a *Franks* hearing and for discovery are denied.  When a plaintiff is *pro se*, a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Applying these principles, Mr. Selvam may amend his FTCA claims.  Leave to amend is denied with respect to Mr. Selvam's claims under Section 1983 and *Bivens* because amendment would be futile.  Plaintiff has thirty days to file an amended complaint that addresses the defects outlined in this opinion with respect to his FTCA claims.  Otherwise, the Clerk of Court shall enter judgment in favor of defendants.

Because the parties have agreed that the FDA is not a defendant in this action and should be dismissed, s*ee* Pl.'s Mem. in Opp'n 30; Defs.' Reply, at 10 n.1; Fed. R. Civ. P. 41(a)(1)(A)(ii), the Clerk of Court is also directed to dismiss the FDA from this action.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated:  November 5, 2021
        Brooklyn, New York